IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08-cv-01823-LTB-KLM

EDUARDO PANAMENO,

      Applicant,

v.

WARDEN JEROME C. ZUERCHER,

      Respondent.
_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____
**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241** [Docket No. 2; Filed August 27, 2008] filed by Eduardo Panameno ("Applicant"). Respondent filed a Response to the Application on December 29, 2008 [Docket No. 26] ("Answer Brief"). Applicant did not file a Traverse. Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C. Colo. L. Civ. R. 72.1.C, this matter has been referred to this Court for recommendation. For the reasons set forth below, the Court recommends that the Application be **DENIED**.

**I.    Statement of the Case**

At the time when Applicant filed his Application, he was a federal prisoner incarcerated at the Federal Correctional Institution in Englewood, Colorado ("FCI-Englewood") [Docket No. 4 at 2]. He has since been transferred to the Federal Correctional Institution in Pekin, Illinois ("FCI-Pekin"). The events giving rise to the Application occurred while Applicant was incarcerated at the Federal Correctional Institution

in Victorville, California ("FCI-Victorville") following his conviction for racketeering, cocaine distribution, and related offenses by the District Court for the Central District of California.

In the Application, Applicant raises one claim for habeas relief, namely that his disciplinary record should be expunged due to the prison's failure to provide him with due process and follow applicable regulations. *Application* [#2] at 3. Specifically, Applicant was charged with and found to be guilty of participating in a prison riot. He claims that he was not given a fair and impartial hearing or rehearing. *Id.* In his Answer Brief, Respondent contends that Applicant received all of the process that he was due, and that any alleged deficiencies in that process, or deviation from prison regulations, were cured by rehearing. *Answer Brief* [#26] at 5-10.

The facts giving rise to Applicant's claim are as follows. On April 16, 2007, a riot occurred at FCI-Victorville. After an investigation, and more than a week after the riot, an incident report was prepared alleging that Applicant was involved in the riot. *Application* [#2] at 6. The incident report, which set forth the charge against Applicant, was provided to him on April 25, 2007. *Id.* at 9. On April 27, 2007, the prison disciplinary committee held a preliminary hearing and Applicant contended that he was not involved in the riot and that he was on his way to the chow hall near the metal detectors when it occurred. *Id.* at 6. The committee referred the charge to the Disciplinary Hearing Officer ("DHO"). At that time, Applicant was advised of his rights, including his right to know the charge against him at least 24-four hours in advance of the DHO hearing, the right to representation at the hearing, the right to call witnesses, the right to speak on his behalf or remain silent, the right to attend the DHO hearing, the right to receive a written decision from the DHO, and the right to appeal that decision. *Id.* at 8. Applicant verified that he was advised of and

understood these rights. *Id.* At that time, he waived his right to representation and to call witnesses. *Id.* at 7.

The DHO hearing was held on May 4, 2007. *Id.* at 9. Applicant denied the charge against him, but declined to make a statement or present any exculpatory evidence or witnesses on his behalf. *Id.* The DHO considered the incident report written by another prison officer, which indicated that Applicant was among a group of inmates kicking and punching black inmates and staff, and was an "active participant" in the violence. *Id.* at 6, 10. The DHO also personally witnessed the incident and saw Applicant striking an inmate with closed fists while another inmate stood over the victim and kicked and stomped on his head, chest, back and lower back. *Id.* at 10. The DHO pulled the other inmate off the victim, but in the meantime, Applicant continued to hit him with his fists. *Id.* Applicant then ran to the metal detectors in an attempt to mingle in with the inmate observers. *Id.* The DHO gave greater weight to the incident report and his own statement than Applicant's earlier statement that he was not involved and was merely near the metal detectors on his way to the chow hall. *Id.* at 11. The DHO found Applicant guilty of the charge and sanctioned him by depriving him of 40 days of earned good-time credit, imposing 60 days of disciplinary segregation, 90 days of lost commissary privileges, and 180 days of lost visiting privileges. The DHO's findings were delivered to Applicant on June 13, 2007, and he took his appeal. *Id.* at 11-12.

On appeal, Applicant argued that it was improper for the hearing to be conducted by a DHO who witnessed the events. *Id.* at 17. Also, he contended that he had witness statements from prison staff and other inmates indicating that they did not see Applicant participating in the riot. *Id.* The Regional Director directed that Applicant receive a

rehearing. *Id.* at 18. At the rehearing, which occurred on October 24, 2007, a different DHO heard Applicant's case. Applicant did not request representation, but did present witnesses. Five witnesses testified that they did not see Applicant participate in the riot, but the majority of those witnesses also testified that they were not present during the riot and arrived after it had been quelled. *Id.* at 13. Only one witness testified that he saw the incident but that he did not "remember" seeing Applicant. *Id.* No witness conclusively testified that Applicant did not participate in the riot. The rehearing DHO also relied on the incident report indicating that the prison investigation revealed that Applicant participated in the riot, and the written statement of a prison staff member who witnessed Applicant participating in the riot. *Id.* at 14. "[T]he DHO determined that the greater weight of the evidence supports [that Applicant] committed the prohibited act . . . ." *Id.*

On August 27, 2008, Applicant filed the present Application which asserts a single claim, namely that the "rioting misconduct . . . should have been expunged due to procedures not being followed." *Application* [#2] at 3. Specifically, he alleges that certain regulations were not followed and particularly takes issue with the fact that his initial hearing was conducted by a DHO who also witnessed the incident. *Id.* "After this HARMFUL ERROR[,] I could not have been given a fair-impartial hearing after the initial one by Staff at that facility . . . ." *Id.*

## II.     Standard of Review

Applicant is challenging a disciplinary sanction he received impacting the length of his federal sentence pursuant to 28 U.S.C. § 2241. *See Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996). Because Applicant is proceeding *pro se*, the Court must construe his Application liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935

F.2d 1106, 1110 (10th Cir. 1991). In this regard, the Court should carefully weigh the need for Applicant to present constitutional claims against any procedural defects caused by Applicant's *pro se* status. *See Clark v. Tansy*, 13 F.3d 1407, 1409 (10th Cir. 1993). However, the Court is not the nonmoving party's advocate and must nevertheless deny an application that is based on vague or conclusory allegations. *Hall*, 935 F.3d at 1110.

**III.     Analysis**

Although Applicant asserts a single due process claim, Respondent suggests that the claim be interpreted to assert three separate legal arguments. *Answer Brief* [#26] at 6-10. Applicant argues that the procedures utilized prior to and during the hearing and rehearing did not satisfy the requirements of due process because (1) the initial hearing was conducted by a DHO who was a witness to the incident in violation of 28 C.F.R. § 541.16(b); (2) Applicant did not receive the incident report in a timely manner in violation fo 28 C.F.R. §§ 541.14, 514.15, 541.17; and (3) there was insufficient evidence to find Applicant guilty of the charge.

As a preliminary matter, "[i]t is well settled 'that an inmate's liberty interest in his earned good time credits cannot be denied without the minimal safeguards afforded by the Due Process Clause of the Fourteenth Amendment.'" *Howard v. United States BOP*, 487 F.3d 808, 811 (10th Cir. 2007) (citation omitted). However, the process that is due a prisoner in a prison disciplinary hearing is limited and must only satisfy three constitutional criteria: (1) advance written notice of the disciplinary charges must be provided; (2) the opportunity to call witnesses and present evidence, when such would not be inconsistent with the prison's safety goals, must be afforded; and (3) a written opinion by the DHO of the evidence relied upon to impose a disciplinary sanction must be provided to the inmate.

5

*Id.* Respondent argues that Applicant received all of the process he was due. Respondent asserts that Applicant received written notice of the charge against him nine days in advance of the initial disciplinary hearing, and that the same notice was also the basis for the charge on rehearing. Respondent asserts that Applicant was provided the opportunity to call witnesses, which he waived at his initial hearing and utilized at his rehearing. Finally, Respondent asserts that Applicant received a written opinion containing the evidence relied upon in support of the initial decision and the rehearing decision. *Answer Brief* [#26] at 5-6.

Nevertheless, Applicant argues that the fact that the initial hearing was heard by a DHO who witnessed the riot was in violation of 28 C.F.R. § 541.16(b) and could not be cured by rehearing. He also argues that the prison's failure to provide him with written notice of the charge against him within twenty-four hours of the report's writing was in violation of C.F.R. §§ 541.14, 514.15 and 541.17. Finally, he argues that there was insufficient evidence of his guilt to convict him of the charge.

### A. Initial Hearing

Applicant argues that his initial hearing was in violation of 28 C.F.R. § 541.16(b) which provides: "In order to insure impartiality, the DHO may not be the reporting officer, investigating officer, the UDC, or a witness to the incident or play a significant part in having the charge(s) referred to the DHO." There is no dispute that the DHO who oversaw the initial hearing was a witness to the riot. However, Respondent argues, and I agree, that Applicant's rehearing by a different DHO who had no personal stake in the outcome cured any prejudice Applicant may have suffered from the initial hearing. Applicant does not contend that any regulations were violated at the rehearing. Rather, his argument appears to be that because prison staff were involved and may have been injured in the riot, no

6

DHO from FCI-Victorville could conduct a fair and impartial hearing. This conclusory statement, without setting forth any specific allegations of improprieties in Applicant's rehearing, fails to allege a constitutional injury. *See Riddle v. Mondragon*, 83 F.3d 1197, 1205 (10th Cir. 1996) (holding that general, conclusory allegations, without supporting factual averments, are insufficient to support a constitutional claim). Moreover, Applicant provides no legal support for his contention that whenever prison guards have been injured by inmates, a DHO from that facility cannot be impartial and the disciplinary hearing must be conducted elsewhere.

Further, I note that in regard to both hearings, Applicant was given advance written notice of the charge against him, the opportunity to call witnesses (which he waived at his initial hearing and which he utilized at his rehearing), and a written order explaining the DHO's decision. The Fifth Amendment does not require more. *See Howard*, 487 F.3d at 811. To the extent that Applicant's claim can be interpreted to make allegations regarding the rights and privileges Applicant was afforded during either hearing, Applicant alleges no specific deficiency. Moreover, I note that while prison regulations applicable to this process afford Applicant the right to representation, to be present, to make a statement, to call witnesses, to present evidence, and to be advised of the decision, the record clearly establishes that Applicant was afforded all of these rights [Docket No. 2 at 6-14]. *See, e.g.*, 28 C.F.R. § 541.17(b)-( g).

**B.    Timeliness of Notice**

Applicant also purports to assert violations of 28 C.F.R. §§ 541.14, 514.15 and 541.17(a). These sections pertain, in part, to the written notice of the charge an inmate is entitled to receive in advance of a hearing. Applicant does not explain his citation to these

7

regulations in his Application, and the Court assumes that Applicant contends that the incident report he received was not timely. The Court notes that section 514.14 involves the investigation process and the preparation of an incident report. Specifically, section 514.14 provides: "The inmate may receive a copy of the Incident Report prior to being seen by the investigating agency. The investigating officer (Bureau of Prisons) shall give the inmate a copy of the Incident Report at the beginning of the investigation, unless there is good cause for delivery at a later date." Section 541.15(a) further states that "[s]taff shall give each inmate charged with violating a Bureau rule a written copy of the charge(s) against the inmate, ordinarily within 24 hours of the time staff became aware of the inmate's involvement." Finally, section 514.17(a) states that an inmate shall be given "advance written notice of the charge(s) against the inmate no less than 24 hours before the inmate's appearance before the Discipline Hearing Officer."

The chronology of events pertinent to this issue are as follows. The riot occurred on April 16, 2007. After an investigation, on April 25, 2007, Applicant was provided an incident report which set forth the charge against him. Applicant had a preliminary hearing before the prison disciplinary committee two days later on April 27, 2007, and he had a DHO hearing on May 4, 2007. While there was a delay between the date of the riot and the date Applicant received the written report of the charge against him, Applicant has not cited to any provision that *required* the prison to provide him notice any earlier. Indeed, the Court notes that Applicant was provided the written report more than 48 hours in advance of his preliminary hearing before the committee, nearly ten days in advance of the initial DHO hearing, and more than seven months in advance of rehearing. I find nothing in this chronology to suggest that any regulations were violated or that Applicant was prejudiced

by the timing of his receipt of the incident report.  As Respondent notes, while "the report *should* be delivered within 24 hours after the incident, . . . . [it] *must* be delivered 24 hours before the DHO hearing."  *Answer Brief* [#26] at 7; *Compare* 28 C.F.R. § 514.15(a) (containing advisory provision relating to an inmate's receipt of the charge within 24 hours of the incident), *with id.* § 514.17(a) (containing mandatory provision relating to inmate's receipt of the charge within 24 hours of the DHO hearing).  Further, I note that even if a violation of a regulation occurred, the failure to adhere to facility policy, without more, "does not equate to a constitutional violation."  *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993).

### C. Evidence of Guilt

Although on its face the Application does not appear to challenge the lack of evidence to support Applicant's disciplinary conviction, construing the Application liberally, the Court considers whether there was sufficient evidence to convict Applicant of participating in the riot.  To be upheld, the disciplinary conviction must be supported by "some evidence."  *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454, (1985).  This is not an overly stringent standard.  "Ascertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board."  *Howard*, 487 F.3d at 812 (quoting *Hill*, 472 U.S. at 455-56).  The decision can be upheld "even if the evidence supporting the decision is 'meager.'"  *Mitchell v. Maynard*, 80 F.3d 1433, 1444 (10th Cir. 1996) (quoting *Hill*, 472 U.S. at 457).

Here, a review of the incident report provides evidence that Applicant was guilty of participating in the riot. The report was prepared after an investigation was conducted and it was determined that Applicant was an "active participant" in the riot [Docket No. 2 at 6]. Applicant was seen "assaulting Black inmates kicking and punching at them and staff." *Id.* Applicant admitted to being near the place where the riot occurred, although he claimed he was merely on his way to eat. *See id.* Although Applicant introduced testimony on rehearing from witnesses that he did not participate in the riot, none of the witnesses conclusively refuted the incident report regarding Applicant's involvement. *See id.* at 13. Moreover, the rehearing DHO considered a written statement from a prison officer who witnessed the riot first-hand and indicated that Applicant was personally involved in the riot and had to be pulled off of a victim inmate. *See id.* at 14. It is unclear whether this written statement was provided by the initial hearing DHO or another prison staff member. Even were the Court not to consider this witness statement, there is "some evidence" contained in the incident report to justify Applicant's disciplinary conviction. As such, the DHO's decision upon rehearing is supported by sufficient evidence and is not subject to being overturned.

## IV. Conclusion

In reviewing the merits of Applicant's claims, the Court finds that Applicant is not entitled to relief under 28 U.S.C. § 2241. No evidentiary hearing is required and, consequently, the appointment of counsel on behalf of Applicant is not necessary. Accordingly, for the reasons stated above, the Court **RECOMMENDS** that the Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 be **DENIED** and that the case

be dismissed **with prejudice**.

IT IS FURTHER **ORDERED** that pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this Recommendation to serve and file specific, written objections. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the district judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199-1200 (10th Cir. 2000). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: March 27, 2009

BY THE COURT:

 s/ Kristen L. Mix  
U.S. Magistrate Judge  
Kristen L. Mix